## THE SEA WITCH.

Restitution of a neutral vessel ordered, which had apparently set out on a lawful voyage, though she was captured out of the most direct and regular course of it, and in a position open to some question ; there having been heavy weather which might have made her desirous to take the course she did,—one hugging a semicircular coast rather than a more direct one across its chord.

APPEAL from the District Court of the United States for the Eastern District of Louisiana.

The schooner Sea Witch was captured in the Gulf of

---

* 4 Wallace, 475.

Mexico on the 31st of December, 1864, by the United States war steamer Metacomet, for alleged breach of the blockade of the Texas coast, then established by our government.

The schooner was a neutral vessel, with a neutral cargo, coffee, drugs, &c., regularly cleared from Vera Cruz for New Orleans, under a license granted by the vice-consul of the United States, in pursuance of the proclamation of the President, opening the port of New Orleans to trade, and of the regulations of the Secretary of the Treasury. But at the time of the capture she was out of the ordinary and most direct line of a voyage from Vera Cruz to New Orleans, and somewhat along the coast and in a position to go to Galveston, Texas, then blockaded. She had encountered heavy weather before the capture and was somewhat damaged; and it was alleged by the master that he had abandoned the voyage to New Orleans, and was about returning to Vera Cruz. Having been brought into New Orleans and libelled as prize in the District Court, restitution was decreed and a certificate of reasonable cause given the captors. The United States appealed.

*Mr. Ashton, special counsel of the United States,* contended that the case exhibited but the ordinary sinuous devices of blockade-runners; simulating one voyage, purposing another. The vessel was just where she would have been had she been going to Galveston, and where she would not have been if going to New Orleans.

Moreover at this time, as is matter of public history, New Orleans had been but recently opened to trade, and of course was glutted with the articles which this vessel carried. Coffee was higher in Vera Cruz than in New Orleans; and as for drugs, it was shipping "coals to New Castle," to take them to the last-named port. Galveston, on the other hand, closely blockaded, was in extreme necessity of both.

*Mr. Marvin, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The only ground of suspicion that a violation of the block-

ade was intended is the fact that the vessel, when captured, was out of the most direct regular course to New Orleans, and in a part of the gulf where she would very probably have been had her real destination been Galveston. But we think this is sufficiently accounted for by the weather, and by the probability that such a vessel, really bound for New Orleans, would prefer to keep at no greater distance from the shore than the blockade would require, rather than take the more direct course across the gulf.

It was stated in the argument that the cargo of the vessel would not command at New Orleans so good a price as at Vera Cruz; and this circumstance, if proved, would be entitled to great weight. But there is no evidence of that sort in the record.

On the whole, therefore, we think that the decree of the District Court was correct, and shall order that it be

AFFIRMED.